UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAMILAH JOLLY; DIEGO ALVAREZ-MIRANDA EZPELETA; and VAUGHN BOBB-WILLIS; individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>     v.<br><br>FURTHERED, INC. d/b/a LAWLINE, INC.,<br><br>                    Defendant. | Case No. 1:24-cv-06401-LJL<br><br>(*consolidated with Case No. 1:24-cv-06709*)<br><br>Hon. Lewis J. Liman |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

    A. Defendant ............................................................................................................. 2

    B. Plaintiffs ............................................................................................................... 2

    C. Alleged Statutory Violations ................................................................................ 3

III. LEGAL STANDARD ...................................................................................................... 4

    A. Rule 12(b)(1) ........................................................................................................ 4

    B. Rule 12(b)(6) ........................................................................................................ 5

IV. ARGUMENT ................................................................................................................... 6

    A. Plaintiffs Lack Standing ....................................................................................... 6

    B. Plaintiffs Fail to Properly Allege a Violation of the VPPA ................................. 8

        1. Plaintiffs Fail to Allege That Lawline Knowingly Transmitted PII. .......... 8

        2. The Information at Issue is Not PII Because It Does Not Identify "Specific Video Materials or Services." ................................................... 10

    C. Plaintiffs' Consent Was Obtained Via Terms & Conditions And Privacy Policy. .................................................................................................................. 12

V. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003) ..................................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................5

*Atl. Recording Corp. v. Project Playlist, Inc.*,
  603 F. Supp. 2d 690 (S.D.N.Y. 2009) ...................................................................................5

*Austin-Spearman v. AMC Network Entm't LLC*,
  98 F. Supp. 3d 662 (S.D.N.Y. 2015) .................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................................5

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230
  (S.D.N.Y. Aug. 11, 2017) .....................................................................................................9

*Boelter v. Hearst Commc'ns, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...................................................................................4

*Broidy Cap. Mgmt. LLC v. Benomar*,
  944 F.3d 436 (2d Cir. 2019) ..................................................................................................4

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 477 (2d Cir. 2016) ..................................................................................................4

*Corbett v. Firstline Sec., Inc.*,
  687 F. Supp. 2d 124 (E.D.N.Y. 2009) .................................................................................13

*Derbaremdiker v. Applebee's Int'l, Inc.*,
  No. 12-CV-01058(KAM), 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ...........................5

*Derbaremdiker v. Applebee's Int'l, Inc.*,
  519 F. App'x. 77 (2d Cir. 2013) ...........................................................................................5

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .................................................................................................6

*Executive Plaza, LLC v. Peerless Ins. Co.*,
  22 N.Y. 3d 511 (2014) ........................................................................................................13

*Grand River Enters. Six Nations, Ltd. v. Boughton*,
    988 F.3d 114 (2d Cir. 2021)..................................................................................................4

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..................................................................................9

*In re Parmalat Securities Litigation*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005)...................................................................................5

*Katz v. Donna Karan Co., L.L.C.*,
    872 F.3d 114 (2d Cir. 2017)..................................................................................................4

*Liberian Cmty. Ass'n of Conn. v. Lamont*,
    970 F.3d 174 (2d Cir. 2020)..................................................................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................................................4

*Martin v. Meredith Corp.*,
    657 F. Supp. 3d 277 (S.D.N.Y. 2023).......................................................................10, 11, 12

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015)...............................................................................8, 11

*Robinson v. Gov't of Malay.*,
    269 F.3d 133 (2d Cir. 2001)..................................................................................................4

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)....................................................................................................5

*Santana v. Take-Two Interactive Software, Inc.*,
    717 F. App'x 126 (2d Cir. 2017) ...........................................................................................8

*Sira v. Morton*,
    380 F.3d 57 (2d Cir. 2004)....................................................................................................5

*Sterk v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) ................................................................................................6

*Thorn v. Formula 1 Motorsports, Inc.*,
    No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019) ................................5

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)..................................................................................................8

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022)......................................................................................9

**Statutes**

18 U.S.C. § 2710 ............................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................................... 1, 2, 4, 5

**I.     INTRODUCTION**

Defendant FurtherEd, Inc. d/b/a Lawline ("Defendant") respectfully submits this Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Class Action Complaint ("Amended Complaint") of Plaintiffs Kamilah Jolly; Diego Alvarez-Miranda Ezpeleta; and Vaughn Bobb-Willis (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rules 12(b)(1) and 12(b)(6), with prejudice.

Defendant Lawline is an online provider of continuing legal education services for attorneys. Attorneys can visit Lawline to watch educational videos, review CLE requirements for their state, read Lawline's blog posts, look up attorneys via the Lawyer Directory, and more.

Plaintiffs allege that Lawline has violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by allegedly disclosing users' personally identifiable information ("PII") without their consent through Lawline.com. Specifically, Plaintiffs allege that Lawline, via use of the Meta Pixel, disclosed to Meta consumers' Facebook ID, their subscription, and the title of each of the specific videos that the consumer requested or obtained on Defendant's website without subscribers' consent.

Plaintiffs' Amended Complaint is fatally flawed. As a threshold matter, Plaintiffs lack Article III standing because the only asserted injury is that "Defendant captures and discloses to Meta information that reveals the specific videos that a particular person viewed as a subscriber of Defendant's website." Dkt. 13, ¶ 3. However, the Amended Complaint itself fails to establish such injury. Furthermore, as established by the Declaration of Richard Hernandez ("Hernandez Decl."), Lawline does not transmit data to Facebook that reveals information about specific videos watched by users. Hernandez Decl. ¶¶ 4-14. The Court should therefore dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

-1-

Plaintiffs' Amended Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(6) because there is no plausible VPPA violation because: (a) the allegedly disclosed information–a Facebook-created cookie and the Uniform Resource Locator ("URL") for articles and other material on Lawline.com–is not PII because it identifies neither a person nor any specific videos he or she requested or obtained; and (b) Plaintiffs fail to sufficiently allege that any such disclosure was knowing.

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice.

## II.     FACTUAL BACKGROUND

### A.     Defendant

Defendant Lawline is headquartered in New York, New York. Dkt. 13, ¶ 29. Lawline is a website that offers over 2,000 continuing legal education courses for attorneys. *Id.* ¶ 30. Lawline also offers a blog that provides updates on practice tips, attorney well-being, CLE compliance, and more.[1] Lawline also hosts the "Lawyers Who Learn" podcast, which features interview with legal professionals discussing their learning methods.[2]

### B.     Plaintiffs

Contrary to Plaintiffs' allegations in the Amended Complaint, Plaintiff Kamilah Jolly ("Plaintiff Jolly") became a paid member of Lawline in 2014, unsubscribed from email communications in 2017, and canceled her subscription to Lawline in 2022. Hernandez Decl. ¶ 15. Upon registration, she accepted Lawline's Terms & Conditions and Privacy Policy. Lawline's

---

[1] *See* Lawline Blog Home page, available at https://blog.lawline.com/ (last visited January 3, 2025).
[2] *See* David Schnurman, *Lawyers Who Learn*, available at https://www.lawline.com/podcast/lawyers-who-learn/ (last visited January 3, 2025).

records reflect no prior complaints or concerns raised by Plaintiff Jolly about the use or dissemination of her personally identifiable information prior to this litigation. *Id.*

Contrary to Plaintiffs' allegations in the Amended Complaint, Plaintiff Diego Alvarez-Miranda Ezpeleta ("Plaintiff Ezpeleta") never paid for a subscription to Lawline.com. *Id.* ¶ 16. Plaintiff Ezpeleta accessed Lawline's services through a <u>free trial</u> account in 2021 and subsequently received a <u>one-year scholarship</u> for a subscription, which Lawline granted as a courtesy. *Id.* His subscription ended on November 2, 2022. *Id.* Plaintiff Ezpeleta accepted Lawline's Terms & Conditions and Privacy Policy, and Lawline's records do not reflect any prior communication from him raising concerns about the collection and handling of his personally identifiable information. *Id.*

Contrary to Plaintiffs' allegations in the Amended Complaint, Plaintiff Vaughn Bobb-Willis ("Plaintiff Willis") created his first Lawline account in May 2021 to access a <u>free course</u>. *Id.* ¶ 17. He subsequently used a <u>free</u> 10-day trial in September 2023 and started a paid subscription in October 2023—after Lawline's Meta Pixel program had ended in September 2022. *Id.* Plaintiff Willis, like the other Plaintiffs, accepted Lawline's Terms & Conditions and Privacy Policy. Lawline's records indicate that Plaintiff Willis did not raise any prior concerns or complaints regarding the collection and handling of his personally identifiable information. *Id.*

### C.  Alleged Statutory Violations

Plaintiffs allege that Lawline disclosed users' PII, including Facebook IDs and video viewing history, to Meta in violation of the Video Privacy Protection Act ("VPPA"). Plaintiffs contend that Lawline's use of the Meta Pixel tool caused the unauthorized sharing of their viewing activity.

### III.  LEGAL STANDARD

#### A.  Rule 12(b)(1)

To establish Article III standing, a plaintiff must show that he or she has: "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Grand River Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 120 (2d Cir. 2021) (citation omitted). The injury in fact "must be 'concrete and particularized'" and "'actual or imminent, not conjectural or hypothetical.'" *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

At the pleading stage, "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001). A facial challenge must rely solely on the allegations in the complaint. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). In a fact-based challenge, on the other hand, the defendant may "'proffer[] evidence beyond the [p]leading.'" *Id.* (citation omitted). Plaintiffs must then either "come forward with evidence of their own to controvert that presented by the defendant" or "rely on the allegations in the [p]leading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). If "'jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 183 (S.D.N.Y. 2017) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)); *see also Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 n.7 (2d Cir. 2019) ("deferral of a jurisdictional issue until trial is an extremely unusual situation" (internal quotation marks and citation omitted)).

### B.     Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In deciding a Rule 12(b)(6) motion, the court may consider documents incorporated by reference. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (citations omitted)). Documents are deemed incorporated where they are "quoted in the complaint," *In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278, 285 n.25 (S.D.N.Y. 2005), or are "documents that the plaintiff either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *see also Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058(KAM), 2012 WL 4482057, at *3 (E.D.N.Y. Sept. 26, 2012), *aff'd,* 519 F. App'x 77 (2d Cir. 2013) (screenshots of defendant's website "quoted in . . . the complaint" are deemed incorporated). Where the contents of a "'website are at the center of [a plaintiff's] allegations,'" the website "is incorporated by reference." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) (citations omitted). The contents of the website are assumed to be accurately depicted, and the Court may conduct its "own review" of the website. *Id.*; *see, e.g., Thorn v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098, at *3 n.2 (S.D.N.Y. Dec. 19, 2019) (reviewing incorporated website to determine plausibility of pleadings).

## IV.   ARGUMENT

### A.   Plaintiffs Lack Standing

Plaintiffs fail to allege a concrete injury-in-fact under Article III. Courts have held that VPPA violations must demonstrate a specific privacy injury, such as wrongful disclosure of video-watching history. *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 666-67 (S.D.N.Y. 2015). Plaintiffs' vague assertions do not meet this standard.

Plaintiffs allege that "when a consumer requests or obtains a specific video from Defendant's website, the Meta Pixel technology that Defendant intentionally installed on its website transmits the consumer's personally identifying information and detailed information concerning the specific interactions the consumer takes on its website (including the consumer's Private Viewing Information revealing the specific videos that he or she requested) to Meta." Dkt. 13, ¶ 40. However, Plaintiffs lack Article III standing because they have not suffered any injury in fact. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (the VPPA "codifies a context-specific extension of the substantive right to privacy"). The alleged privacy injury is demonstrably false both on the face of the Amended Complaint and in light of the actual transmission of data to Facebook via use of the Meta Pixel.

Courts have held that "the VPPA creates a right to the privacy of one's video-watching history, the deprivation of which--through wrongful disclosure, or statutory violation, alone--constitutes an injury sufficient to confer Article III standing." *Austin-Spearman*, 98 F. Supp. 3d at 666-67 (citing *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For purposes of Article III standing, the VPPA offers protection for a very narrow privacy right.

Plaintiffs attempt to establish a specific privacy injury through a screenshot of one of Lawline's course pages, which purportedly reflects information sent to Facebook via a "GET

Request" when a user visits a Lawline.com webpage with the URL https://www.lawline.com/course/the-impact-of-artificial-intelligence-on-employment-litigation. Dkt. 13, ¶ 54. Plaintiffs claim the image reveals the title of the video segment allegedly viewed when a user visited the page containing the course. The incorporated website, however, shows this is not the title of the video, but rather the title of the **course syllabus** for a course titled "The Impact of Artificial Intelligence on Employment Litigation." *Id.*

There is no video clip embedded in the URL. The Amended Complaint therefore alleges only that the Metal Pixel sends the article/page title to Facebook via the GET Request, not the video title. Disclosure of the title of an article or webpage to Facebook does not invade "the privacy of one's video-watching history," the only possible injury in fact under the VPPA. *Austin-Spearman*, 98 F. Supp. 3d at 666. Even disclosure of the title of a video embedded in an article would not, in itself, disclose that a video was viewed (as opposed to merely being present on the page) and, therefore, would not constitute a privacy injury under VPPA. *See id.*

The Hernandez Declaration further explains that the user's browser shared information about Lawline.com's webpages via the Meta Pixel through GET Requests. Dkt. 13, ¶ 54. Under Meta Pixel's default settings—which were retained by Lawline—data is transmitted only when a webpage is loaded. Hernandez Decl. ¶ 8; *see* Declaration of Joshua Briones ("Briones Decl.") ¶ 4. Thus, user interactions with video content are not captured or transmitted to Facebook. The GET Request transmits data to Facebook only when a webpage is loaded on Lawline.com, and no additional GET requests are triggered by user interactions with videos, such as playing, pausing, or skipping content. Hernandez Decl. ¶ 8. Because information is shared only during the very short interval when a page loads, no information about what a user does once on that page is shared, including whether they watched or requested any video content. *Id.* No information about whether

a user plays, pauses, or fast-forwards video content is sent to Facebook. *Id.* Lawline does not share users' video-watching history with Facebook, *id.* at ¶¶ 9, 11, and so Plaintiffs have not experienced an injury in fact and, thus, has no standing. *See Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12, 15-16 (2d Cir. 2017) (dismissing claim for lack of injury in fact where plaintiffs' and defendant's activities demonstrated "[n]o reasonable person … would believe" defendant's presentation of their face scan technology "resulted in plaintiffs' biometric data being used or disclosed without their consent"). Because Plaintiffs fail to demonstrate standing and could not do so under any set of facts, this Court lacks jurisdiction over the claims and should dismiss the Amended Complaint without leave to amend. *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008).

**B.      Plaintiffs Fail to Properly Allege a Violation of the VPPA.**

Under the VPPA, a "video tape service provider" who "*knowingly* discloses" PII is liable. 18 U.S.C. § 2710(b)(1) (emphasis added). PII must specifically identify a person as having requested or obtained "specific video materials or services." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). Plaintiffs fail to state a claim under the VPPA because 1) Plaintiffs fail to sufficiently allege that any disclosure was knowing, and 2) the allegedly disclosed information is not PII because it does not identify a person or any specific video requested or obtained by a person.

**1.      Plaintiffs Fail to Allege That Lawline Knowingly Transmitted PII.**

As a threshold matter, Plaintiffs fail to allege a knowing disclosure—i.e., that Lawline knew it was disclosing to Facebook both user identities and the Lawline.com videos they had watched and that Facebook was pairing this information. "[T]he term 'knowingly' connotes actual knowledge. It is not enough . . . that a disclosure be merely 'voluntary' in the minimal sense of the

defendant's being 'aware of what he or she is doing[.]'" *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (citing 18 U.S.C. § 2710(b)(1)). "[T]he knowledge element of the VPPA violation is intertwined with the definition of PII. If [the defendant] did not think it was conveying PII, then there could be no knowledge of the conveyance, regardless of whether it knew what Facebook might do with the information." *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017). "'[K]nowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code,"' or the defendant's knowledge of such code transmission. *Hulu*, 86 F. Supp. 3d at 1095. Plaintiffs' allegation that Lawline decided to incorporate the Meta Pixel into Lawline.com (which would only disclose the name of the page being viewed) is insufficient. And every other theory underlying Plaintiffs' claim fails to rise '"above the speculative level,'" *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 88 (S.D.N.Y. 2022) (citations omitted). There are no well-pleaded allegations that Lawline had knowledge that: (a) Lawline.com users with Facebook accounts would allow Facebook to incorporate cookies into their browsers; (b) Facebook would pair the c_user cookie information with the webpage URL information (if it ever did); or (c) Facebook would navigate to that article URL, find a video clip (if there was one), and infer that a particular user watched the clip (if he/she ever did). Speculation is no substitute for well pleaded allegations of knowledge.

Lawline's Meta Pixel use was for generalized ad performance optimization and vendors of the service assured Lawline that the data collected was aggregated and anonymized for marketing purposes. There are no allegations of Lawline's knowledge that Meta paired cookies with video-specific activity. Plaintiffs instead rely on speculative theories that fail to allege facts rising "above the speculative level." *Id.*

### 2. The Information at Issue is Not PII Because It Does Not Identify "Specific Video Materials or Services."

Plaintiffs allege that Lawline transmitted general page titles and URLs, but such information does not identify specific video materials. In *Martin v. Meredith Corp.*, this Court held that URLs indicating general webpage activity are insufficient to constitute PII. 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023). Plaintiffs' claims fail because they do not allege the disclosure of course titles or specific video activity. The data at issue relates only to page views and generalized tracking—not video engagement.

The only data transmitted by Lawline to Meta Pixel was limited to generalized, hashed user activity (*e.g.,* page views) for purposes of optimizing advertising. Hernandez Decl. ¶¶ 4, 13. Furthermore, Lawline's Privacy Policy explicitly states, "[w]e will not disclose your name and address, along with the title, description, or subject matter of any audiovisual materials you have viewed on our Website, unless you opt-in to such disclosure."[3] This provision directly negates Plaintiffs' allegations of unauthorized video history disclosure.

In *Martin v. Meredith Corp.*, this Court dismissed a VPPA claim based on allegations that Dotdash Meredith, the parent company of People.com, unlawfully disclosed plaintiff William Martin's video viewing information to Facebook through the use of Facebook Pixel. 657 F. Supp. at 285. Martin alleged that Dotdash Meredith's use of Facebook Pixel to transmit general URLs, which included video content, to Facebook constituted a violation of the VPPA, as it supposedly disclosed his PII in connection with his video viewing history.

---

[3] Lawline, Privacy Policy, available at https://www.lawline.com/info/privacy-policy#:~:text=We%20will%20not%20disclose%20your,opting%2Din%20to%20such%20disclosure (last modified Sept. 11, 2023).

The court, however, disagreed with Martin's interpretation of what constitutes PII under the VPPA. The court noted that under the VPPA, PII must directly link an individual to specific video content requested or obtained by that individual. In dismissing the claim, the court emphasized that the data transmitted through Facebook Pixel did not include sufficient detail to identify Martin as having requested or obtained a specific video. Instead, the data was limited to general URLs, which could indicate the presence of a video but did not conclusively identify Martin as having watched any particular video.

The court's reasoning was that a mere URL associated with a general webpage, even if it includes a video, does not satisfy the VPPA's requirement for PII. The court reasoned that "[s]imply sending a URL of a People.com webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services." *Martin*, 657 F. Supp. at 285. The court added that even when a webpage included a video, "sending the URL does not identify a person as having requested or obtained the video on that page since the person may instead have merely reviewed an article on the page or opened the page and done nothing more." *Id.* The user could have merely opened the page without engaging with the video content, or the page could have contained other content unrelated to video. This level of specificity is crucial under the VPPA. The court highlighted that to sustain a claim under the VPPA, the data disclosed must unequivocally establish both the identity of the user and their engagement with a particular video. In *Martin*, the data provided to Facebook did not go beyond a generic URL that could be associated with various content types, failing to meet the VPPA standard for actionable personal identification.

The ruling in *Martin* aligns with other cases, such as *Robinson v. Disney Online*, 152 F. Supp. 3d at 182, in which courts have required a clear connection between the data disclosed and

-11-

the user's specific viewing history. The *Martin* decision supports Lawline's argument that, even if some generalized data about page views or URLs was shared with Meta, such data does not meet the VPPA's definition of PII. Moreover, the Amended Complaint points to the c_user field on Defendant's website. Dkt. 13, ¶ 54. The Facebook ID contained in the c_user cookie is a random string of numbers that **does not**, by itself, identify anyone. Hernandez Decl. ¶¶ 4, 13. Page views, c_user cookies, or aggregated URLs, which do not specifically identify individual users as having watched specific videos, fall short of VPPA requirements, thus rendering Plaintiffs' claims unsustainable. *Id*.

### C.    Plaintiffs' Consent Was Obtained Via Terms & Conditions And Privacy Policy.

Plaintiffs claim Lawline did not obtain consent for sharing their data. However, Lawline's Terms and Conditions[4] and Privacy Policy make clear that by using the website, users consent to certain data practices, including third-party data sharing for marketing purposes. The Privacy Policy states: "By accessing or using this Website, you agree to this privacy policy," which Plaintiffs accepted upon registration. *See supra* note 3. The Member Account section of the Terms and Conditions reinforces this, stating that "[r]egistration data and certain other demographic information about you are subject to Lawline's privacy policy." *See supra* note 4. All three named Plaintiffs consented to these terms, which is required by Defendant in order to use the website.

Furthermore, Lawline's Terms and Conditions include a one-year statute of limitations for claims related to the website. The Terms and Conditions state, "[y]ou agree that … any claim or cause of action arising out of or relating to the Website and these Terms of Service must be filed within one (1) year of the date the cause of action arose, or be barred as untimely." *See* supra note

---

[4] Lawline, Terms and Conditions, https://www.lawline.com/info/terms-and-conditions (last updated July 17, 2024).

4. Since Lawline's Meta Pixel program ceased operation in September 2022, a court will likely find that Plaintiffs' claims are untimely under the Terms and Conditions. *Executive Plaza, LLC v. Peerless Ins. Co.*, 22 N.Y. 3d 511, 518, (2014) ("'An agreement which modifies the Statute of Limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable.'"). Reasonableness is considered "'in view of the circumstances of each particular case.'" *Id.* at 519. New York courts have found one-year limitations clauses to be reasonable. *See Corbett v. Firstline Sec., Inc.*, 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009).

## V.   CONCLUSION

For the foregoing reasons, Defendant respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice against Plaintiffs.

Dated: January 6, 2025

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

By _____
Joshua Briones*
Grecia Rivas-Rudra*
2049 Century Park East. Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
jbriones@mintz.com
grivas@mintz.com

Erin E. Galliher
919 Third Avenue
New York, NY 10022
Telephone: (212) 935-3000
Facsimile: (212) 983-3115
eegalliher@mintz.com

*Attorneys for Defendant FurtherEd, Inc. d/b/a Lawline*

*Admitted Pro Hac Vice

## ATTORNEY CERTIFICATE OF WORD-COUNT COMPLIANCE

Pursuant to Local Rule 7.1(c), Defendant specifies that the foregoing brief was prepared on a computer using Microsoft Word. Pursuant to the word count system in Microsoft Word, the total number of words in the brief, inclusive of headings and footnotes and exclusive of pages containing the caption, table of contents, the table of authorities, the signature block, and the certificate of compliance is words 3,717.

Dated: January 6, 2025

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

By: /s/ Joshua Briones
Joshua Briones*
Grecia Rivas-Rudra*
2049 Century Park East. Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202
jbriones@mintz.com
grivas@mintz.com

Erin E. Galliher
919 Third Avenue
New York, NY 10022
Telephone: (212) 935-3000
Facsimile: (212) 983-3115
eegalliher@mintz.com

*Attorneys for Defendant FurtherEd, Inc. d/b/a Lawline*

*Admitted Pro Hac Vice*

-15-

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 6, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                                                           _____
                                                           Joshua Briones